## BOARD OF SUPERVISORS OF GREENE COUNTY *v.* J. N. SNELLGROVE.

### [60 South. 1023.]

1. COUNTIES. *Board of supervisors. Powers. County bridges. Joint construction. Code* 1906, *sections* 4449-4450.

   The board of supervisors of one county cannot exercise its constitutional jurisdiction within the territorial limits of another county.

2. BRIDGES. *Between two counties. Joint construction.*

   Code 1906, section 4449, authorizing the building of bridges over streams dividing two counties by the joint action of the boards of supervisors of both counties, does not authorize the construction of a bridge by such joint boards over a stream wholly within the limits of one county. Nor does section 4450 relating to the working of roads already established in adjoining counties, apply to authorize such joint construction.

3. COUNTIES. *Boards of supervision. Jurisdiction.*

   Boards of supervisors are required to conform to the methods prescribed by the statute in the exercise of their powers conferred by the Constitution.

APPEAL from the chancery court of Greene county.
HON. J. M. STEVENS, Chancellor.

Suit by J. N. Snellgrove against the board of supervisors of Greene county. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*J. W. Backstrom,* attorney for appellant.

*Heidelberg & Heidelberg,* attorneys for appellee.

No brief of counsel on either side found in the record.

COOK, J., delivered the opinion of the court.

The boards of supervisors of Greene and Wayne counties, believing the convenience and general welfare of the

inhabitants of both counties would be promoted by the erection of a bridge across the Chickasaha river, entered into an agreement by which each county was obligated to contribute to the cost of construction. Appellee, a taxpayer of Greene county, exhibited his bill of complaint against the board of supervisors of that county, praying for an injunction restraining the board of, supervisors from carrying out its portion of the agreement. To this bill a demurrer was interposed and overruled, and an appeal was granted by the chancellor to settle the principles of law.

The first paragraph of the bill of complaint describes the situation fully, and, in order that this opinion may be intelligible, we quote this paragraph, which is as follows: "Complainant, J. N. Snellgrove, respectfully shows to the court that he is a resident and taxpayer of Greene county, Miss.; that Greene county, Miss., is situated just south of Wayne county, Miss., which latter county bounds said county of Greene on the north; that the Chickasaha river flows in a southern direction from said county of Wayne into said county of Greene about six miles west of the eastern boundary line of both of said counties, and about four miles west of the town of State Line, which is located partly in Wayne and partly in Greene counties; that the said town of State Line is the principal market place of many of the citizens of both of said counties; that a public highway crosses said Chickasaha river about one and one-half miles north of the line dividing Wayne and Greene counties and in Wayne county, which said highway extends eastward into the said town of State Line; that the public in crossing said highway do so by means of a ferry, which is a slow and inconvenient way of crossing said river; that said highway is used by some of the citizens of both said Green county and Wayne county in going to and from the town of State Line to do their trading; that it is admitted that a bridge would be a more con-

venient and speedy way of crossing said river, and that
at a late meeting of the board of supervisors of Wayne
county an order was made by said board of supervisors
providing for the construction of an iron bridge across
said Chickasaha river about one and one-half miles south
of where said ferry is now located and where said high-
way crosses said river and about one hundred and sixty-
six yards north of the line dividing the said Wayne and
Greene counties and wholly in said Wayne county, said
order being conditioned on the board of supervisors of
Greene county co-operating with the board of supervis-
ors of Wayne county in the construction of said bridge
and paying one-half of the cost of the construction there-
of; that said bridge when constructed would benefit some
of the citizens of both Wayne and Greene counties, and
the said county of Wayne has not felt disposed or able
to construct said bridge unless Greene county would pay
one-half of the cost of construction; that the site at
which said bridge is proposed to be erected, and which
was agreed upon by a joint committee of the two coun-
ties, is about one hundred and sixty-six yards from the
county line separating the said county of Wayne from
the said county of Greene and located wholly in Wayne
county; that no public highway crosses the said river
at the proposed bridge site or nearer the proposed bridge
site than the said public highway that crosses the river
at the said ferry about one and one-half miles above, al-
though complainant admits on information that it is the
intention of the board of supervisors of Wayne county
to open up a public highway across the said river at the
proposed bridge site, when said bridge is erected; that
said river forms no part of the boundary line dividing
the said county of Wayne from said county of Greene,
but flows direct from the county of Wayne into the coun-
ty of Greene, and that at the place where said river flows
from Wayne county into Greene county there is no suit-
able place for the construction of said bridge, the land

at said place being low and unsuitable, and the above site is the most desirable place to erect a bridge within one hundred and sixty-six yards of the county line separating the two counties.''

. The boards of the two counties were evidently endeavoring to comply with the second clause of section 4449 of the Code of 1906, which reads thus: "And when a bridge shall be necessary over a stream which divides one county from another, the boards of supervisors of both counties shall join in the agreement for building, repairing and keeping the same.''

If the proposed bridge is to be built across a stream dividing the two counteis, there can be no doubt of the authority of the board of supervisors of the two counties to jointly build and maintain the bridge, but, from the allegations of the bill of complaint and the plat of the two counties filed as an exhibit to the bill, it appears that the Chickasaha river does not anywhere divide the counties one from the other; on the contrary the river flows from the north to the south across Wayne county and into Greene county, crossing the east and west boundary line at right angles, touching the boundary only at the spot where it crosses same. The proposed bridge is to be constructed, not at the place where the river crosses the east and west boundary line between the two counties, but at a point north of said line and wholly within the limits of Wayne county. It is to be noted that at the present time there is no highway leading from the line to the proposed site of the bridge, but the bill avers that Wayne county has entered into an agreement to locate a public road from the line to the new bridge. It appears that there is a public road leading to the river in Wayne county, and about one and one-half miles from the boundary line; that at the time of the joint agreement of the two boards of supervisors, the river was crossed at this point by means of a ferry. But little has been gained from our investigation of the books; the laws of other states

varying upon subjects of this kind. In some of the states, we gather from the decisions, the statutes, authorizing joint agreements between different jurisdictions touching the cost of the construction of public works to serve the interests of both are broader than our statutes upon this subject, providing, in some instances, that such joint agreements may be made when the proposed public utility is to be located *near* the boundary line between the two jurisdictions to be served.

Whether the boards of supervisors of the counties of this state, in the absence of any legislation on the subject, would be authorized to construct roads and build bridges, under their constitutional jurisdiction over the subject, is not before us, because, in the present case, and upon the subject involved, there is specific legislation. It is also observable that the board of supervisors of Greene county are attempting to exercise its constitutional jurisdiction within the territorial limits of another county, and we think it could not be seriously argued that this exercise of power is contemplated by the organic law of the state. It may be within the power of the legislative department to provide for cases like the present, but it is certain that it has failed to do so.

Section 4450 of the Code of 1906, does not apply, as the conditions therein provided for are existing conditions, and not conditions to be created.

It is unnecessary to review the decisions of this court to prove that boards of supervisors are required to conform to the methods prescribed by the statute in the exercise of their powers conferred by the Constitution. This is the settled law of the state. As the legislature has marked the limits of power to be exercised by boards of one county within the territorial limits of another county and has omitted to provide for conditions like the one under review, we are constrained to affirm the judgment of the chancellor in overruling the demurrer to the bill of complaint.

*Affirmed.*